UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON PEREZ,<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | Case No. EDCV-04-1544-JC<br><br>MEMORANDUM OPINION |

## I. PROCEEDINGS

Plaintiff Ramon Perez filed a Complaint on December 17, 2004, seeking review of the Commissioner's denial of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The parties have filed a consent to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' Joint Stipulation ("JS"), filed on January 6, 2006.

After consideration of the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The Administrative Law Judge's

(ALJ) findings are supported by substantial evidence and are free from material error.[1]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISIONS

### A. Previously Adjudicated Application

On September 1, 2000, plaintiff filed applications for DIB under Title II of the Social Security Act and SSI under Title XVI of the Social Security Act. (Administrative Record ("AR") 27). Plaintiff alleged a disability onset date of January 27, 1999, based upon depression, carpal tunnel syndrome, and hand, wrist, and elbow pain. (AR 27). An ALJ (the "prior ALJ") examined the medical record, including a February 21, 2002 report of plaintiff's treating physicians S. Paul De Silva and Charles Sharp, and heard testimony from medical and vocational experts on July 16, 2002.[2] (AR 27-20). On August 26, 2002, the prior ALJ granted plaintiff benefits for the period of January 27, 1999 through February 28, 2002. (AR 23, 29-30). The prior ALJ found, however, that plaintiff was not disabled after February 28, 2002, and that as of March 1, 2002, plaintiff's medical impairment improved and he regained the ability to engage in substantial gainful activity. (AR 29-30). The record does not reflect that plaintiff sought review of the prior ALJ's decision before the Appeals Council.

---

[1]The harmless error rule applies to the review of administrative decisions regarding disability. See Batson v. Commissioner, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

[2]On January 29, 2002, Drs. De Silva and Sharp jointly conducted a psychiatric examination of plaintiff and, on February 21, 2002, issued a report. (AR 215-33).

**B.     Application in Issue**

On December 6, 2002, plaintiff filed a subsequent application for DIB under Title II of the Social Security Act. (AR 58). Plaintiff alleged a disability onset date of January 28, 1999 due to tendinitis, constant pain, concentration problems, depression, and anxiety. (AR 35, 40, 58). The application was denied initially and upon reconsideration. (AR 14, 35-38, 39-44). After holding a hearing on June 21, 2004, at which plaintiff was represented by counsel, the ALJ issued an unfavorable decision denying benefits on July 26, 2004. (AR 13-19). The ALJ found, inter alia: (i) plaintiff had "undergone significant 'changed circumstances' in the form of improvement" since the prior ALJ's decision (AR 17); (ii) plaintiff was not receiving any current mental health care or counseling (AR 18); (iii) plaintiff currently had no severe mental impairment (AR 15); (iv) plaintiff had no functionally limiting mental impairment and there was no evidence of the existence of any of the "B" criteria at a functionally limiting level (AR 18);[3] (v) plaintiff's impairments in the musculoskeletal system were severe, but did not meet or medically equal a listed impairment in Appendix 1, Subpart P, Regulation No. 4 (AR 18-19); (vi) plaintiff was capable of performing work at essentially a medium residual functional capacity (AR 18, 19); and (vii) plaintiff could perform his past relevant work as a vending machine driver. (AR 19). The ALJ concluded that plaintiff was not disabled at any time through the date of the decision. (AR 19). The Appeals Council denied plaintiff's request for review of the ALJ's decision. (AR 3-5).

---

[3]The "B" criteria consist of (i) restrictions of activities of daily living; (ii) difficulties in maintaining social functioning; (iii) difficulties in maintaining concentration, persistence, or pace; and (iv) episodes of decompensation, each of extended duration. (AR 263). See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04B.

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

///
///
///
///
///
///

|   |     |                                                                                   |
|---|-----|-----------------------------------------------------------------------------------|
|   | (4) | Does the claimant possess the residual functional capacity ("RFC") to perform his past relevant work?[4] If so, the claimant is not disabled. If not, proceed to step five. |
|   | (5) | Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled. |

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

      The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Bustamante, 262 F.3d at 954; see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ has special duty to fully and fairly develop record and to assure that claimant's interests are considered). The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability). If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show, at step five, that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational

---

[4] Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

1  Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly
2  known as "the Grids"). Id.  When a claimant has both exertional (strength-related)
3  and nonexertional limitations, the Grids are inapplicable and the ALJ should take
4  the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir.
5  2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

6    **B.**  **Standard of Review**

7    Pursuant to 42 U.S.C. section 405(g), this Court may set aside a denial of
8  benefits only if it is not supported by substantial evidence or if it is based on legal
9  error. Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) (citing Thomas v.
10  Barnhart, 278 F.3d 947, 954 (9th Cir. 2002)).  Substantial evidence is "such
11  relevant evidence as a reasonable mind might accept as adequate to support a
12  conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and
13  quotations omitted).  It is "more than a mere scintilla but less than a
14  preponderance." Howard ex rel. Wolff ("Wolff") v. Barnhart, 341 F.3d 1006,
15  1011 (9th Cir. 2003) (citing Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir.
16  1997)).

17    To determine whether substantial evidence supports a finding, the Court
18  must "'consider the record as a whole, weighing both evidence that supports and
19  evidence that detracts from the [Commissioner's] conclusion.'" Aukland v.
20  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d
21  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
22  or reversing that conclusion, the Court may not substitute its judgment for that of
23  the Commissioner. Reddick v. Chater, 157 F.3d 715, 720-21 (9th Cir. 1998)
24  (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th
25  Cir. 1995)).

26    **C.**  **Presumption Based Upon Prior ALJ Determination**

27    A prior final determination that a claimant is not disabled creates a
28  presumption of continuing non-disability. Taylor v. Heckler, 765 F.2d 872, 875

(9th Cir. 1985); Lyle v. Secretary, 700 F.2d 566, 568 (9th Cir. 1983). The claimant can overcome this burden by proving "changed circumstances," indicating a greater disability. Schneider v. Commissioner, 223 F.3d 968, 973 (9th Cir. 2000) (finding changed circumstances based on worse psychological test scores and diagnosis); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (attainment of advanced age constitutes changed circumstance precluding application of res judicata to first administrate law judge's ultimate finding against disability because advanced age often outcome-determinative under Medical-Vocational grids); Lester v. Chater, 81 F.3d 821, 827 n.3 (9th Cir. 1995) as amended (1996) (finding two changed circumstances – new allegation of mental impairment not raised in prior application or addressed in prior denial and attainment of age 50); Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (presumption based on prior decision that claimant capable of substantial gainful activity overcome by changed circumstances consisting of increased severity of carpal tunnel syndrome and diagnosis of ADHD); Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989) (en banc) (attainment of advanced age constitutes changed circumstance precluding application of res judicata to first administrative law judge's ultimate finding against disability); Taylor, 765 F.2d at 875 (finding claimant's condition improved rather than deteriorated and claimant failed to show requisite changed circumstances); Booz v. Secretary of Health & Human Services, 734 F.2d 1378, 1379-80 (9th Cir. 1984) (finding no changed circumstance).

## IV. DISCUSSION

### A. The ALJ's Consideration of the Treating Physicians' Opinions

Plaintiff contends that the ALJ improperly failed to provide any reason for rejecting the diagnoses and opinions of his treating physicians, Drs. De Silva and

Sharp (collectively the "Treating Physicians").[5] Specifically, he asserts that the "ALJ failed to discuss any of Dr. De Silva's findings or symptoms that supported his Diagnosis of Major Depression or the [Global Assessment Functioning ("GAF") score] 60 that was assessed by Dr. De Silva."[6] (JS 3).

In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)). The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)). When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict. Thomas v. Barnhart, 278 F.3d 947, 956-57 (9th Cir. 2002). Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. Connett v. Barnhart, 340 F.3d 871,

---

[5]As noted earlier, on January 29, 2002, these two physicians jointly conducted a psychiatric examination of plaintiff and, on February 21, 2002, issued a report. (AR 215-33).

[6]A Global Assessment of Functioning ("GAF") score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV"), 32 (4th ed. 2000). A GAF score from 51-60 denotes "[s]ome moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." See DSM-IV, at 34.

874 (9th Cir. 2003).  However, the ALJ can reject the opinion of a treating physician in favor of a conflicting opinion of another examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id.  (citation and internal quotations omitted); see also Magallanes, 881 F.2d at 751 (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings).  Moreover, the findings of a nontreating, nonexamining physician can amount to substantial evidence so long as other evidence in the record supports those findings.  Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).

      This Court rejects plaintiff's contention that the ALJ erroneously failed to provide reasons for rejecting the Treating Physicians' opinions for at least two reasons.  First, the Court disagrees with plaintiff's premise.  The record does not reflect that the ALJ in fact rejected the opinions of plaintiff's Treating Physicians.  In light of the prior ALJ's determination that plaintiff was not disabled as of March 1, 2002, the issue before the ALJ was whether plaintiff demonstrated "changed circumstances" sufficient to overcome the applicable presumption of continuing disability.  Plaintiff points to no evidence in the record, and the Court has found none, which suggests that the Treating Physicians offered any opinions or diagnoses after they issued their February 21, 2002 report.  The Treating Physicians' conclusion that plaintiff was disabled from May 22, 2001 through January 29, 2002 had little, if any relevance to whether plaintiff's condition had changed since March 1, 2002 – the date as of which the prior ALJ concluded that plaintiff was not disabled.  Thus, the current ALJ's conclusion that plaintiff's condition had improved since the date the Treating Physicians rendered their opinions, and that plaintiff was no longer disabled is not tantamount to a rejection of the Treating Physicians' opinions.  As the record does not reflect that the ALJ

"rejected" the Treating Physicians' opinions, no statement of reasons to support such "rejection" was necessary.[7]

Second, even if the ALJ's determination that plaintiff was no longer disabled may be characterized as a "rejection" of the Treating Physicians' opinions and/or as a decision to rely upon contradictory opinions of non-treating physicians, the ALJ's decision adequately reflects the ALJ's reasons therefor. The opinions of the non-treating physicians referenced in the ALJ's decision were rendered after March 1, 2002 and thus directly bear upon whether changed circumstances existed.[8] The ALJ explained that since the determination of the prior ALJ, plaintiff "improved to the point that he is not in physical therapy, outpatient mental health treatment, or any real medical treatment of any kind." (AR 17-18). In considering this case, the ALJ found "evidence that the claimant has undergone significant 'changed circumstances' in the form of improvement and, as such, reiterate[d] [his] determination that [plaintiff] is capable of performing work at essentially a medium residual functional capacity. . . [and that he has] no functionally limiting mental impairment. . . ." (AR 17-18). Contrary to plaintiff's suggestion, this is not a situation in which the ALJ chose the opinions of non-treating physicians over that of Treating Physicians. Rather, it is a case in which the ALJ properly relied upon the only opinions before him which were

---

[7] Nor does the Court believe that it is fair to characterize the opinions of physicians who examined plaintiff after March 1, 2002 as "contradictory" to the Treating Physicians opinions as these examinations were performed during different time frames.

[8] Dr. Smith, who conducted a consultive psychiatric examination and evaluation on January 31, 2003, opined that plaintiff would not be impaired in his ability to work. (AR 16-17, 237-42). The State Agency Board certified psychiatrist concluded on February 27, 2003, that plaintiff did not have a severe impairment – an assessment which was affirmed by another physician on June 26, 2003. (AR 17, 253-667).

rendered after March 1, 2002 – the only medical opinions which were directly relevant to whether plaintiff's mental condition had undergone "changed circumstances." Thus, the ALJ's decision to rely upon the opinions of non-treating physicians was not error. As discussed below, the ALJ's decision was supported by substantial evidence. Consequently, the Court finds no error in the ALJ's reliance on the opinions of non-treating physicians.

### B. The ALJ's Determination that Plaintiff's Mental Condition Was Not Severe Is Supported by Substantial Evidence

Plaintiff contends that the ALJ erred in failing to find his alleged mental impairment severe. (JS 7-8). Specifically, plaintiff asserts that the ALJ failed to consider Dr. De Silva's diagnosis of "Major Depressive Disorder, Single Episode and Pain Disorder Associated with Both Psychological Factors and a General Medical Condition," and assessment of GAF at 60. (JS 7). Furthermore, plaintiff asserts that the ALJ ignored his reported statements that he had feelings of hopelessness and helplessness, he was tired all the time, he had a significant decrease in his level of sexual interest and activity, his memory and concentration were poor, and he had testified at the June 21, 2004 hearing that he was depressed. (JS 7).

At step two of the sequential evaluation process, an impairment or a combination of impairments may be found not medically severe only if evidence clearly establishes slight abnormality that has no more than minimal effect on an individual's ability to work. Webb v. Barnhart, 433 F. 3d 683, 687 (9th Cir. 2005). To determine whether or not an impairment is severe, the ALJ must determine whether a claimant's impairment or combination of impairments

///
///
///
///

significantly limits his physical or mental ability to do "basic work activities." See id., see also 20 C.F.R. §§ 404.1521 (a), 416.921(a).[9]

In this case, the Court finds that the ALJ's determination that plaintiff's mental impairment was not severe is supported by substantial evidence. First, the ALJ properly relied on the opinions of three non-treating physicians who rendered opinions regarding plaintiff's mental condition after March 1, 2002. See Thomas, 278 F. 3d at 957 (opinions of non-treating or non-examining physicians may serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record). Dr. Smith performed a psychiatric evaluation of plaintiff on January 31, 2003. (AR 237-242). Based on her independent clinical findings, Dr. Smith diagnosed plaintiff with "depressive order not otherwise specified." (AR 241). Dr. Smith further assessed plaintiff's current GAF at 70.[10] (AR 241). She opined that plaintiff was not impaired in his ability to (i) understand, remember or complete simple commands; (ii) understand, remember or complete complex demands; (iii) interact appropriately with supervisors, co-workers, or the public; (iv) comply with job rules such as safety and attendance; (v) respond to change in the normal workplace

---

[9] Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b).

[10] A GAF score from 61-70 denotes "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." See DSM-IV, at 34.

setting; and (v) maintain persistence and pace in a normal workplace setting. (AR 241). Dr. Smith found that Plaintiff's mental impairment did not impair his ability to work at the time. (AR 241).

Dr. Smith's opinion is consistent with the opinions of the State agency psychiatrists Drs. Kenneth D. Michael and K. Gregg. Drs. Michael and Gregg conducted a longitudinal assessment of Plaintiff's mental condition from February 21, 2002 to February 27, 2003, and concluded that although Plaintiff was depressed, his psychiatric impairment was not severe and caused no specific limitations. (AR 253, 263, 265). Drs. Michael and Gregg explicitly concluded that Plaintiff's mental impairment was not severe. (AR 263, 265).

Second, other evidence referenced in the ALJ's decision supports the opinions of the non-treating physicians and the ALJ's conclusion that plaintiff's mental impairments were not severe. The fact that plaintiff did not seek further psychiatric care after his worker's compensation claim settled, that plaintiff's current treatment at the time of the decision was "minimal to non-existent" and that he was "not receiving any current mental health care or counseling" corroborate the opinions of the non-treating physicians. (AR 17-18).

The lack of medical treatment and/or conservative treatment, along with the finding of that plaintiff's mental condition was not severe by Drs. Smith, Michael, and Gregg constitute substantial evidence to support the ALJ's finding that plaintiff's mental impairment did not have more than a minimal effect on his ability to perform basic work activities. Burch, 400 F.3d at 681 (fact that claimant's pain did not motivate her to seek more than conservative treatment was "powerful evidence regarding the extent of her symptoms").[11]

---

[11]Even if the ALJ erred in finding that plaintiff's mental impairments were not severe, such error was harmless and would not warrant remand as it appears to
(continued...)

13

### C. The ALJ's Failure Expressly to Rate the Degree of Plaintiff's Functional Limitations Using the Requisite Terminology Does Not Warrant Remand

Plaintiff contends that the ALJ erroneously failed expressly to rate plaintiff's degree of functional limitations in four areas – an omission which is indicative of the ALJ's failure to use the proper legal standards in reaching the decision to deny plaintiff's application for disability benefits. See 20 C.F.R. § 404.1520a, 416.920a. (JS 8-9).

Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner employs a "special technique" to evaluate its severity and its impact on claimant's ability to work. 20 C.F.R. § 404.1520a. The special technique requires the ALJ to rate the degree of functional limitations in four functional areas – daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(2-4); 416.920a(c). With respect to the first three areas, a five-point scale is to be used: none, mild, moderate, marked, extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). With respect to the fourth area, a four-point scale is to be used: none; one or two; three; four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4).

Plaintiff is correct that the ALJ did not expressly rate the degree of functional limitations using the terminology specified within the aforementioned regulations. However, the ALJ did find that "[p]laintiff had no functionally limiting mental impairment" and that "[t]here [was] no evidence of the existence

---

[11](...continued)
this Court that the ALJ's decision that plaintiff was not disabled would have remained unaffected even if plaintiff's alleged mental impairments had been found to be severe.

14

of ***any*** of the B criteria at a functionally limiting level." (AR 18) (emphasis added). As indicated earlier, the "B" criteria correspond to the four functional areas which ALJs are required to evaluate in cases involving allegations of mental impairment. See supra note 3. Although the ALJ did not use the precise terms specified on the five-point and four-point scales, the ALJ's decision effectively reflects his ratings of "none" in each such functional area.

To the extent the ALJ erroneously failed to use the precise terms specified on the aforementioned scales, the Court finds such error harmless. Burch, 400 F. 3d at 679 (the decision of the ALJ will not be reversed for errors that are harmless).

### D. The ALJ Was Not Required to Hear Testimony of a Vocational Expert

Plaintiff contends that the ALJ erroneously failed to call a vocational expert to testify regarding the impact his alleged non-exertional limitations had on his ability to perform alternative work. (JS 10). Although the testimony of a vocational expert is, in some circumstances, necessary at step five of the sequential evaluation process, plaintiff cites no authority for the proposition that such testimony is necessary in cases in which a plaintiff has failed to meet his burden at step four of the process, i.e., when the plaintiff has not demonstrated that he can no longer perform his past relevant work. See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (ALJ did not erroneously fail to call vocational expert as ALJ determined at step four of sequential analysis, that claimant could perform past relevant work and therefore was not diabled).

In this case, the ALJ concluded at step four of the sequential analysis that plaintiff had a "medium residual functional capacity" that would allow him to return to past relevant work as a vending machine driver. (AR 18). This finding is supported by substantial evidence. As plaintiff did not meet his burden at step

four of the analysis to demonstrate that he could no longer perform his past relevant work, it was not necessary for the ALJ to hear testimony from a vocational expert regarding the impact his alleged non-exertional limitations had on his ability to perform alternative work.

## V. CONCLUSION

The decision of the Commissioner is therefore AFFIRMED.

DATED: February 28, 2007

                                                  /s/

                                      JACQUELINE CHOOLJIAN
                                      UNITED STATES MAGISTRATE JUDGE